IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

AMANDA E. V.,

               Plaintiff,

        v.                                          Civil Action No.
                                      5:23-CV-687 (DEP)

MARTIN J. O'MALLEY,
Commissioner of Social Security,[1]

               Defendant.

_____

APPEARANCES:                       OF COUNSEL:

FOR PLAINTIFF

LEGAL AID SOCIETY         CINDY DOMINGUE-HENDRICKSON, ESQ.
OF MID-NEW YORK, INC.
120 Bleecker Street, 2nd Floor
Utica, NY 13501

FOR DEFENDANT

SOCIAL SECURITY ADMIN.      JASON PECK, ESQ. and
OFFICE OF GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

_____

[1]     Plaintiff's complaint named Kilolo Kijakazi, in her official capacity as the Acting Commissioner of Social Security, as the defendant. On December 20, 2023, Martin J. O'Malley took office as the Commissioner of Social Security. He has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change. See 42 U.S.C. § 405(g).

<u>ORDER</u>

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. §§ 405(g) and 1383(c), are cross-motions for judgment on the pleadings.[2] Oral argument was heard in connection with those motions on July 18, 2024, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

---

[2]        This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

ORDERED, as follows:

1)      Defendant's motion for judgment on the pleadings is GRANTED.

2)      The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3)      The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

David E. Peebles
U.S. Magistrate Judge

Dated:      July 23, 2024
            Syracuse, NY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
AMANDA V.,

                                        Plaintiff,

-v-                                     5:23-CV-687

MARTIN J. O'MALLEY,
COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
-----------------------------------------------------x

**DECISION TRANSCRIPT**
**BEFORE THE HONORABLE DAVID E. PEEBLES**
July 18, 2024
100 South Clinton Street, Syracuse, NY 13261


For the Plaintiff:

    LEGAL SERVICES OF CENTRAL NEW YORK
    120 Bleecker Street
    2nd Floor
    Utica, New York 13501
    BY: **CINDY DOMINGUE-HENDRICKSON, ESQ.**

For the Defendant:

    SOCIAL SECURITY ADMINISTRATION
    6401 Security Boulevard
    Baltimore, Maryland 21235
    BY: **JASON PECK, ESQ.**




*Hannah F. Cavanaugh, RPR, CRR, CSR, NYACR, NYRCR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8545*

```
 1              (The Court and all parties present by telephone.
 2    Time noted:  1:43 p.m.)
 3              THE COURT:  Let me begin by thanking counsel for
 4    excellent presentations.  I've enjoyed working with you and
 5    you've presented some interesting and intriguing issues,
 6    including with respect to step five, which I'll address
 7    momentarily.
 8              Before I address the merits of this case, I wanted to
 9    broach the subject of consent.  When this case was filed, it
10    was, pursuant to our General Order 18, assigned to magistrate
11    judge -- it was assigned to -- originally to magistrate judge --
12    I can't find it, but one of my colleague magistrate judges and a
13    consent form was executed by attorney Elizabeth Lombardi on
14    behalf of the plaintiff.  It left blank the identity of the
15    magistrate judge and it simply says, "voluntarily consents to
16    have United States magistrate judge blank conduct all further
17    proceedings in this case to disposition."
18              I wanted to make sure, does plaintiff consent to my
19    jurisdiction to hear and decide the case?
20              MS. DOMINGUE-HENDRICKSON:  Yes, your Honor.
21              THE COURT:  All right.  Thank you.
22              Plaintiff has commenced this proceeding pursuant to
23    42, United States Code, Sections 405(g) and 1383(c)(3) to
24    challenge an adverse determination by the Commissioner of Social
25    Security finding that plaintiff was not disabled at the relevant
```

1    times and therefore ineligible for the benefits sought.

2            The background is as follows:  Plaintiff was born in

3    August of 1986.  She is almost 38 years of age.  She was

4    33 years of age at the time of her application for benefits on

5    December 30, 2019, and almost 33 at the time of the alleged

6    onset of her disability on July 3, 2019.  She stands 5'7" in

7    height and weighs approximately 150 pounds.

8            Plaintiff has had various living arrangements

9    throughout the course of this case.  At one time she lived with

10   her mother and daughter.  This was at the time of the hearing

11   conducted on November 1, 2022.  She has also lived in a homeless

12   shelter and at the YMCA, and she also reportedly lived in a

13   rented room in 2020.

14           Plaintiff is unmarried.  She has one daughter who was

15   age 13 on November 1, 2022.  She is in the custody of the

16   plaintiff's mother.  Plaintiff is right-handed.  She has a dog.

17   She has a 9th grade education, although the evidence is

18   equivocal as to whether she actually finished 9th grade.  At

19   page 665 of the Administrative Transcript, there is indication

20   she completed the 9th grade.  She testified at the hearing,

21   however, at page 52 that she had not.  She has not received a

22   GED.  While in school, she attended regular classes.

23           Plaintiff does not drive and does not take public

24   transportation.  Plaintiff stopped working in December of 2012.

25   She quit at that time.  When working, she was a cashier in a

1    pizza parlor.  She worked in a convenience store in the deli

2    department.  She worked on an assembly line.  She was in

3    housekeeping and was a warehouse selector at one point.

4            Physically, plaintiff suffers from several

5    impairments, including lumbar degenerative disc disease post

6    laminectomy, an anoxic brain injury caused by an overdose,

7    and -- I will spell this out -- she suffers from ankylosing,

8    A-N-K-Y-L-O-S-I-N-G, spondylitis, which I understand is a type

9    of arthritis that causes inflammation in the joints and

10   ligaments of the spine and may also affect peripheral joints,

11   like knees, ankles, and hips.  She also suffers from chronic

12   obstructive pulmonary disease, or COPD, neck pain, arthritis in

13   her back, leg, and hands, irritable bowel syndrome, and hearing

14   loss for which she uses hearing aids and a recommendation has

15   been made for a cochlear plant.

16           Mentally, plaintiff has suffered from a drug overdose

17   that occurred in or about May of 2016.  She also suffers from

18   bipolar disorder, posttraumatic stress disorder, anxiety,

19   depression, and dysthymic disorder.  There was a reported

20   suicide attempt by her in May of 2016.

21           Plaintiff's activities of daily living, as indicated

22   at page 698 and other portions of the Administrative Transcript,

23   include plaintiff's ability to dress, bathe, groom, care for her

24   support dog, clean, do laundry, shop seven days a week.  She

25   socializes a little, she builds jewelry, she watches television,

1   she plays video games.  Plaintiff is a smoker and has smoked one

2   pack of cigarettes per day on average.

3           Procedurally, plaintiff applied for Title XVI

4   benefits on December 30, 2019, alleging an onset date of July 3,

5   2019.  There are prior unfavorable decisions based on earlier

6   applications.  Those decisions were from October 19, 2016, and

7   July 2, 2019.  In support of her current application, she

8   alleges disability based upon PTSD, bipolar disorder,

9   depression, anxiety, a traumatic brain injury, hearing loss,

10  COPD, lower back issues, and arthritis.

11          A hearing was conducted on July 12, 2022, by

12  Administrative Law Judge Bruce Fein, F-E-I-N.  It was adjourned

13  to give plaintiff an opportunity to seek representation.  A

14  subsequent hearing was held with a vocational expert on

15  November 1, 2022, by ALJ Fein who then issued a subsequent

16  unfavorable decision on November 16, 2022.  The Social Security

17  Administration Appeals Council denied plaintiff's application

18  for review on May 23, 2023.  This action was commenced on

19  June 8, 2023, and is timely.

20          In his decision, ALJ Fein applied the familiar

21  five-step sequential test for determining disability.  At step

22  one, he concluded plaintiff had not engaged in substantial

23  gainful activity since December of 2019 and noted that she last

24  worked, apparently, in 2012.

25          At step two, he concluded that plaintiff does suffer

1   from severe impairments that impose more than minimal

2   limitations on plaintiff's ability to perform basic work

3   functions, including bilateral sensorineural hearing loss,

4   lumbar degenerative disc disease, post lumbar laminectomy, a

5   toxic brain injury, ankylosing spondylitis, COPD, bipolar

6   disorder, dysthymic disorder, generalized anxiety disorder, and

7   PTSD.

8           At step three, he concluded that plaintiff's

9   conditions do not meet or medically equal any of the listed

10  presumptively disabling conditions set forth in the regulations

11  of the Commissioner, specifically considering listings 1.15,

12  2.10, 3.02, 11.18, 14.09, 12.02, 12.04, 12.06, and 12.15.

13          Reviewing the evidence, ALJ Fein next concluded that

14  plaintiff is capable of performing the following residual

15  functional capacity notwithstanding her impairments:  She can

16  perform light work, except she can occasionally climb ramps or

17  stairs, ladders, ropes, or scaffolds; can occasionally balance,

18  stoop, kneel, crouch, or crawl; and frequently handle, finger,

19  and feel bilaterally.  She should avoid concentrated exposure to

20  noises at the louder higher level as defined in the Dictionary

21  of Occupational Titles and the Selected Characteristics of

22  Occupations, and concentrated exposure to pulmonary irritants

23  such as fumes, odors, gases, dust, poorly ventilated areas, and

24  she will need to have ready access to restroom facilities in the

25  workplace.  She can perform work limited to simple, routine, and

1    repetitive tasks with only occasionally interaction -- that's a

2    typographical error -- with supervisors, coworkers, and the

3    public.  She can work in a low stress job defined as having only

4    occasional decisionmaking, changes in the work setting, and

5    judgment required on the job.

6             Counsel, if you could mute your phone.  We're getting

7    a ringing on the phone.

8             Applying that RFC at step four, the ALJ concluded

9    that plaintiff has no past relevant work to consider and thus

10   proceeded to step five where, with the benefit of a vocational

11   expert's testimony, he concluded that there is available work in

12   the national economy that plaintiff is capable of performing,

13   citing as representative positions garment sorter,

14   dispatcher/router, and mail clerk/mail sorter.

15            As you know, my task is limited in this case to

16   determining whether correct legal principles were applied and

17   the resulting determination is supported by substantial

18   evidence, defined as such relevant evidence as a reasonable mind

19   would find sufficient to support a conclusion.  It is an

20   extremely deferential standard, as the Second Circuit noted in

21   *Brault v. Social Security Administration Commissioner*, 683 F.3d

22   443 from the Second Circuit, 2012.  In that case, the Second

23   Circuit noted that the standard is even more deferential than

24   the clearly erroneous standard and observed that under that

25   standard, once an ALJ finds a fact, it can be rejected only if a

1   reasonable factfinder would have to conclude otherwise.  The

2   standard was later and more recently reiterated in *Schillo v.*

3   *Kijakazi*, 31 F.4d 64 from April 6, 2022.

4            In this case, plaintiff has raised several

5   contentions, two of which I treated in tandem.  In the first,

6   she alleges error in the weighing of medical opinions,

7   specifically citing the opinions of Dr. Geoffrey Hopkins, who is

8   reportedly a treating physician, and gave an opinion together

9   with Nurse Practitioner Hayley Craner, the opinion of consultive

10  examiner Dr. David Schaich, S-C-H-A-I-C-H, and the prior

11  administrative medical findings of doctors J. Ochoa and H.

12  Ferring.  Secondly, she cites alleged error in the evaluation of

13  her hearing impairment.  And thirdly, she challenges the RFC

14  reasoning level and portrays an alleged potential conflict in

15  respect of the reasoning level between the testimony of the

16  vocational expert and the DOT that required the ALJ to probe and

17  resolve.

18           Turning first to the evaluation of the medical

19  opinions.  As the Commissioner correctly argues, because this

20  application was filed after March 27, 2017, the case is subject

21  to the amended regulations regarding opinion evidence.  Under

22  those regulations, the Commissioner will not defer or give any

23  specific evidentiary weight, including controlling weight, to

24  any medical opinions, including those from medical sources, but

25  instead must consider whether those opinions are persuasive by

1    primarily considering whether they are supported by and

2    consistent with the record in the case, 20 C.F.R. Section

3    416.920c.  When an ALJ weighs a medical opinion, he or she must

4    articulate how persuasive he or she finds the opinions and

5    explain how he or she considered the factors of supportability

6    and consistency.

7              In this case, the first medical opinion addressed was

8    that of Dr. Hopkins and Nurse Practitioner Craner.  It was dated

9    October 7, 2022.  It appears at pages 1449 to 1454.  It notes

10   that plaintiff's treatment began with Dr. Hopkins on July 7,

11   2022, and was monthly.  There are several marked limitations

12   defined as 11 to 20 percent of the workday or workweek,

13   including two in the domain of understanding, remembering, or

14   applying information, two in the domain of interacting with

15   others, and five in the domain of concentration, persistence, or

16   maintaining pace.  The opinion also finds one marked limitation

17   in adapting or managing oneself and indicates that plaintiff

18   would be absent more than four days per month and late more than

19   four days per month.

20             The Administrative Law Judge addressed that medical

21   opinion at page 28 and found it to be, quote, "less persuasive."

22   As reasons, he stated that the marked limitations opined are not

23   supported by clinical records of those providers, which there

24   are none, or by objective medical evidence as a whole, and

25   specifically noted plaintiff's activities of daily living.

1    The plaintiff argues that although it is a checkbox

2  form, that is not alone a sufficient reason to reject the

3  opinions noted on the form, she further maintains that while the

4  treating source rule has been abrogated, there are cases that

5  suggest that a treating source perspective is still important,

6  particularly if there's a lengthy treatment relationship.

7  Clearly, a treatment relationship is a factor that the

8  regulations speak to.  In this case, however, plaintiff was only

9  seen by Dr. Hopkins approximately four times and there are no

10  records of treatment in the -- in the Administrative Transcript

11  from which the Court could review whether they support or not

12  the opinions.

13    It is a checkbox form.  There is minimal discussion.

14  On the front page, there are diagnoses noted, there are some

15  statements concerning clinical findings, and it was noted that

16  plaintiff was seen monthly for medication management and that

17  symptoms are responding well to current medications.  At the end

18  of each section, however, the form requests an explanation or

19  examples that would elaborate upon the check boxes in each of

20  those domains and those are blank.

21    I recognize that in *Colgan v. Kijakazi*, 22 F.4d 353,

22  from January 3, 2022, that the Second Circuit has noted that the

23  mere fact that an opinion is on a checkbox form in and of itself

24  is not a basis to fully discount it.  In that case, however, it

25  was noted that the checkbox form was supported by voluminous

1    treatment notes gathered over the course of nearly three years

2    of clinical treatment by the physician whose opinion was in

3    question, and this case is entirely different.  There's no

4    explanation in addressing the specifics of each of those domains

5    and no treatment notes in the record whatsoever from Dr.

6    Hopkins, and so I don't find any error in discounting Dr.

7    Hopkins' opinion.  I'll note that that conclusion is also

8    supported by *Heaman v. Berryhill*, and that is at 765 F. App'x

9    498, from March 13, 2019, Second Circuit.

10           The next opinion that was addressed is Dr. David

11   Schaich.  That is from June 1, 2020.  It appears at pages 695 to

12   700 of the Administrative Transcript.  And the opinion notes

13   several, what I would characterize as, marked limitations,

14   including in the ability to use reason and judgment to make

15   work-related decisions, in the ability to interact adequately

16   with supervisors, coworkers, and the public, marked limitation

17   in ability to sustain concentration and perform a task at a

18   consistent pace, and marked limitation in the ability to

19   regulate emotions, control behavior, and maintain wellbeing.

20           The Administrative Law Judge found that opinion to be

21   less persuasive.  The discussion is at pages 27 and 28 of the

22   Administrative Transcript and the Administrative Law Judge noted

23   that the clinical findings of the consultative exam did not

24   completely support the conclusion concerning the marked

25   limitations.  And although I will note that there's certainly

 1   some portions of the clinical findings that may arguably support

 2   it, judgment poor, insight limited, the findings also show that

 3   plaintiff's affect was of a full range and appropriate to speech

 4   and thought content, mood was reported as okay, sensorium was

 5   clear, plaintiff was oriented to person, place, and time,

 6   attention and concentration were intact, and recent and remote

 7   memory skills were only mildly impaired due to cognitive

 8   difficulties.  So it doesn't -- I can't say that that reason is

 9   invalid.

10           It also is pointed out by the Administrative Law

11   Judge that the limitations are inconsistent with objective

12   medical evidence, including claimant's course of treatment and

13   reported activities.  And as the Administrative Law Judge noted

14   at pages 26 to 27, they are robust.  Plaintiff lived in an

15   apartment by herself with her dog, has friends in the building

16   and on Facebook, regularly goes to the Family Dollar store near

17   her building.  She walks her dog, she shops, she walks, she

18   plays games on her phone, she lives independently, takes care of

19   activities of daily living.  She told the consultative examiner

20   she could dress, bathe, groom herself, prepare food, clean, do

21   laundry, shop.  She reported she socialized a little.  Family

22   relationships were good and her hobby was building jewelry.  She

23   plays video games, she watches television, she shops seven days

24   a week.  At one point, she lived with roommates, watched movies,

25   and played games on her phone.  So a fairly robust indication of

1    the ability to perform activities of daily living.  Once again,

2    I am unable to say that the Administrative Law Judge erred in

3    the weight given to this medical opinion.

4            The last is from Drs. Ochoa and Dr. Ferring.  Dr.

5    Ochoa on June 6, 2020, gave an opinion concerning plaintiff's

6    mental capacity.  It appears at 107 to 124 of the Administrative

7    Transcript.  In terms of the so-called B criteria, Dr. Ochoa

8    indicated a mild limitation in understanding, remembering, or

9    applying information, a moderate limitation in interacting with

10   others, a moderate limitation in concentration, persistence, and

11   maintaining pace, and a moderate limitation in adapting or

12   managing oneself.

13           In terms of the mental RFC, he stated the following

14   at 122 -- he or she, I don't know which:  Totality of the

15   evidence indicates the claimant can understand and remember

16   detailed instructions and procedures, sustain concentration to

17   complete ordinary work tasks on a sustained basis, interact in

18   an appropriate manner, and adapt to routine work-related changes

19   and make work-related decisions.

20           The ALJ found that opinion to be more persuasive at

21   page 28 and found that it is supported by a review of the

22   medical evidence, including the report of the consultative

23   examiner, noted that the person giving that prior administrative

24   medical finding was familiar with the agency's disability

25   programs, and there was support for the assessment with

1   references to clinical findings.  The finding of Dr. Ochoa was

2   later affirmed in an opinion given by Dr. Ferring on April 9,

3   2021.  It appears at 126 to 153.  It was addressed by the

4   Administrative Law Judge together with Dr. Ochoa's opinion.

5            I'll note that although I understand that there are

6   cases that suggest, particularly in mental health cases, that

7   the opinion of a non-examining consultant should be looked at

8   carefully.  Nonetheless, the case law is clear that a prior

9   administrative medical finding can provide substantial evidence

10  if it is supported, *Woytowicz v. Commissioner of Social*

11  *Security*, 2016 WL 6427787, from the Northern District of New

12  York, October 5, 2016, report and recommendation of Magistrate

13  Judge William B. Carter, adopted at 2016 WL 6426385, and that's

14  October 28, 2016.

15           I agree with the plaintiff that perhaps it might be

16  entitled, as I said, a little bit less weight because it

17  involves an inherently subjective situation, *Dana F. V.*

18  *Berryhill*, 2019 WL 7067060, and that is from the Northern

19  District of New York, December 23, 2019.  Nonetheless, I am

20  unable to say that the Commissioner erred in relying on the

21  opinions of Dr. Ochoa and Dr. Ferring.  Plaintiff argues that

22  those opinions are stale and did not have the benefit of

23  subsequent evidence, but I did not see any evidence of

24  significant deterioration in plaintiff's condition such that

25  would undermine the opinions of Dr. Ochoa and Dr. Ferring.

AMANDA V. v. SOCIAL SECURITY                    15

1          The plaintiff complains of the residual functional

2   capacity and the sufficiency of dealing with plaintiff's hearing

3   condition.  An RFC represents a finding of the range of tasks a

4   plaintiff is capable of performing notwithstanding the

5   impairments at issue, 20 C.F.R. Section 416.945(a).  That means

6   that an RFC represents a claimant's maximum ability to perform

7   sustained work activities in an ordinary setting on a regular

8   and continuing basis, meaning eight hours a day for five days a

9   week or an equivalent schedule, *Tankisi v. Commissioner of*

10  *Social Security*, 521 F. App'x 29, Second Circuit, 2013.  And, of

11  course, an RFC must be informed by all of the evidence of

12  record, including opinion evidence, treatment notes, and other

13  relevant evidence.

14          In this case, plaintiff clearly has hearing issues.

15  She has hearing aids and is a candidate for a cochlear implant

16  in her left ear.  There's an opinion from Dr. Putcha, the agency

17  consultant, that does not include any limitations with regard to

18  hearing.  At page 118, Dr. Putcha opined that with regard to

19  noise, plaintiff was unlimited.  In Dr. Siddiqui's subsequent

20  residual functional capacity prior administrative medical

21  finding, he did specifically state that plaintiff will be

22  precluded from jobs requiring perfect binaural hearing.  That's

23  at page 143, and also indicated at 144 that plaintiff needs to

24  avoid even moderate exposure to noise.

25          Dr. Elke Lorensen examined the plaintiff and issued a

AMANDA V. v. SOCIAL SECURITY                16

1   report on July 27, 2020, at page 758 through 764.  She noted the

2   hearing loss issue on the first page, but did not include any

3   limitation addressing either noise or plaintiff's ability to

4   hear.

5           It seems to me that there are two issues here.  One

6   is plaintiff's ability to hear.  And of course, the backdrop is

7   that it's plaintiff's burden to establish limitations associated

8   with any impairments that she may have.

9           In this case, the plaintiff did not show any

10  difficulty at the time of the hearing to communicate.  Page 41

11  of the Administrative Transcript indicates that she proceeded in

12  the hearing without hearing aids.  The Administrative Law Judge

13  did touch upon hearing and stated on page 25, as for claimant's

14  bilateral sensorineural hearing loss, as well as others, the

15  evidence of record does not support the allegations regarding

16  the intensity, persistence, and limiting effect of those

17  conditions.  So I find that plaintiff has not carried her burden

18  of demonstrating that there should have been a limitation in the

19  RFC concerning her ability to hear.

20          In terms of noise level, that appears to be an issue

21  and was addressed in the residual functional capacity, as I

22  indicated previously.  So if, in fact, as plaintiff argues that

23  a quiet job is required for the plaintiff because of her

24  sensitivity to noise, as defendant argues, the router position

25  is, under the DOT, listed as a noise level two, quiet, and the

1   router is 222.587-038.  And so there appear to be -- if you

2   eliminate the other two jobs, there's sufficient number

3   nonetheless, of jobs available to the plaintiff to satisfy the

4   Commissioner's burden at step five, *Bavaro v. Astrue*, 413 F.

5   App'x 382, from the Second Circuit, 2011.  So if there is error

6   in that regard, it is harmless.

7          Which brings me to the last issue, which, frankly,

8   intrigued me and perplexed me a little bit.  There are three

9   positions cited in the ALJ's decision.  As I indicated, the

10  router is one.  And a router under reasoning is listed as level

11  two, which is defined as, "apply common sense, understanding, to

12  carry out detailed, but uninvolved written or oral instructions,

13  deal with problems involving a few concrete variables in or from

14  standardized situations."  The position of garment sorter, which

15  is DOT 222.687-014, is also a level two reasoning position, and

16  so it would be subject to the same explanation.  The third is

17  mail clerk.  That position is a level three reasoning position,

18  which is defined as follows:  Apply common sense, understanding

19  to carry out instructions furnished in written, oral, or

20  diagrammatic form, deal with problems involving several concrete

21  variables in or from standard deviations.

22          Plaintiff argues that it is the defendant's burden,

23  which, of course, is true at step five and that it was not met

24  in this case.  It is well accepted that elicitation of testimony

25  from a vocational expert is a proper means of fulfilling the

1   agency's burden at step five of the disability test to establish

2   the existence of jobs in sufficient numbers in the national and

3   regional economy that plaintiff is capable of performing, *Bapp*

4   *v. Bowen*, 803 F. 2d 601, from the Second Circuit, 1986.  And, of

5   course, that depends on the hypothetical posed to the vocational

6   expert being identical to the residual functional capacity

7   finding.  In this case, that burden was satisfied.

8           The argument of plaintiff is that she's not capable

9   of performing at level three reasoning and, secondly, based upon

10  *Gibbons v. Commissioner of Social Security*, 2023 WL 3830774,

11  from the Second Circuit, June 6, 2023, and under *Lockwood v.*

12  *Commissioner of Social Security*, 914 F.3d 87, from January 23,

13  2019, and Social Security Ruling 00-04P, there was a potential

14  conflict between the vocational expert's testimony and the DOT

15  that resulted in a burden to the Administrative Law Judge to

16  flush out and resolve.

17          Let me say first that the courts in this case have

18  made it clear that level two jobs, which I indicated the router

19  and garment sorter are, level two reasoning is consistent with

20  simple, routine, and repetitive tasks, *Edwards v. Astrue*, 2010

21  WL 3701776, Northern District of New York, September 16, 2010,

22  *Timothy M. v. Kijakazi*, 2021 WL 4307455, from September 22,

23  2021 -- and I'll note that that decision also collects several

24  other cases standing for that proposition -- and *Reynolds v.*

25  *Commissioner of Social Security*, 2012 WL 2050410, Northern

 1    District of New York, June 6, 2012.

 2            There are matters, including, for example, access to

 3    the bathroom facilities that are not addressed in the Dictionary

 4    of Occupational Titles.  At page 56 of the Administrative

 5    Transcript, the Administrative Law Judge stated the following:

 6    "So I will assume that your testimony," that being the

 7    vocational expert, "will be based upon your knowledge,

 8    education, training, and experience and is consistent with the

 9    Dictionary of Occupational Titles unless you tell me otherwise.

10    All right?"  And the response was, "yes, your Honor."  And, of

11    course, during the testimony there was no indication of any such

12    conflict.

13            The Second Circuit's decision in *Gibbons* presented me

14    a little bit of a challenge as to whether or not it is

15    inconsistent with the cases cited above by implication.  It

16    clearly dealt with level three jobs, and so I am not relying on

17    the reasoning level three job to find that the Commissioner

18    satisfied his burden.  I'm dealing with garment sorter and

19    router only, but I don't believe *Gibbons* should be followed in

20    this case because it is distinguishable.  In that case, first of

21    all, the plaintiff's counsel signaled, at least implicitly, that

22    there was a potential conflict and that the client in that case

23    might not be able to perform at that level three reasoning.

24            In this case, as I indicated previously, the level

25    two requirement is that the plaintiff can apply common sense,

 1  understanding to carry out detailed, but uninvolved, written or

 2  oral instructions, deal with problems involving a few concrete

 3  variables in or from standardized situations, and I don't find

 4  that to be in conflict with the RFC in this case, which limited

 5  the plaintiff to simple, routine, repetitive tasks and that she

 6  work in a low stress job defined as having only occasional

 7  decisionmaking, changes in the work setting, and judgment

 8  required on the job.  So I don't find that *Gibbons* required the

 9  Administrative Law Judge to probe any potential conflict because

10  I don't believe there was one, and so I'm going to follow

11  *Timothy M.*, *Edwards*, and *Reynolds* and find that there is no

12  conflict between the RFC in this case and plaintiff's ability to

13  meet level two reasoning.

14          So in summary, I don't find any error with regard to

15  addressing the hearing issue.  I don't find any error with

16  regard to the medical opinions.  I view plaintiff's challenge as

17  simply requesting that I reweigh the opinions, which is not a

18  proper function of the Court, and I don't find any issue with

19  the Commissioner's meeting his burden at step five, so I will

20  grant judgment on the pleadings to the defendant and order

21  dismissal of plaintiff's complaint.

22          I hope you both have a good rest of your summer.

23  Thank you.

24          THE COURTROOM DEPUTY:  Court is adjourned.

25          MS. DOMINGUE-HENDRICKSON:  Thank you, your Honor.

1              (Time noted:  2:26 p.m.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1

 2

 3

 4                    CERTIFICATE OF OFFICIAL REPORTER

 5

 6

 7            I, HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR,

 8   NYRCR, Official U.S. Court Reporter, in and for the United

 9   States District Court for the Northern District of New York, DO

10   HEREBY CERTIFY that pursuant to Section 753, Title 28, United

11   States Code, that the foregoing is a true and correct transcript

12   of the stenographically reported proceedings held in the

13   above-entitled matter and that the transcript page format is in

14   conformance with the regulations of the Judicial Conference of

15   the United States.

16

17            Dated this 22nd day of July, 2024.

18

19            s/ Hannah F. Cavanaugh_____

20            HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR, NYRCR

21            Official U.S. Court Reporter

22

23

24

25
```